151 P.3d 818

**John GOODMAN and Emma Lou Goodman, husband and wife, Plaintiffs–Respondents–Cross Appellants,**

**v.**

**Sallie H. LOTHROP, Defendant,**

**and**

**Alta Hess, Defendant–Appellant–Cross Respondent.**

**John Goodman and Emma Lou Goodman, husband and wife, Plaintiffs–Respondents–Cross Appellants,**

**v.**

**Sallie H. Lothrop, Defendant–Appellant–Cross Respondent,**

**and**

**Alta Hess, Defendant.**

**Nos. 31291, 31292.**

Supreme Court of Idaho, Boise, March 2006 Term.

Jan. 4, 2007.

---

Johnson, Olson, Chtd., Pocatello, for appellant Hess. L. Charles Johnson, III argued.

Sallie Lothrop, Downey, pro se appellant argued.

Merrill & Merrill, Pocatello, for respondents. Kent A. Higgins argued.

BURDICK, Justice.

This case arises from a district court order to enforce a mediated settlement agreement over the objections of one of the parties to that agreement. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Sallie H. Lothrop (Lothrop) and her mother, Alta Hess (Hess), are involved in a property boundary dispute with a neighbor, John Goodman (Goodman).[1] Based on the language of his deed, Goodman claims ownership over a strip of property also claimed by Lothrop and Hess (collectively, the Appellants). Lothrop acquired the property from Hess on March 16, 1987. The warranty deed recited that Hess conveyed the real property to the Lothrops

> TO HAVE AND TO HOLD the said premises, with their appurtenances unto the said Grantee [sic], their heirs and assigns forever. And the said Grantor does hereby covenant to and with the said Grantee [sic], that they are the owners in fee simple of said premises; that they are free from all incumbrances [encumbrances] and that they [sic] will warrant and defend the same from all lawful claims whatsoever.

A Memorandum of Agreement signed the same day recited a payment schedule and included the following provision:

> 3. Seller [Hess] shall have the right to remain in possession of the residence and premises until such time as she shall be unable to occupy the same by reason of death or her permanent disability requiring her to live elsewhere. Buyers [Lothrops] agree to pay fire insurance, taxes and costs of maintaining the premises without charge to the Seller.

Nothing about Hess's life estate was mentioned in the deed, and the Memorandum of Agreement was never recorded. The Appellants contend the description of Goodman's property in his deed is in error and that a longstanding fence line defines the correct boundary between the neighboring properties.

Goodman brought suit in district court against the Appellants for quiet title, trespass and ejection from the disputed strip of land, and they responded with identical coun-

---

1. John Goodman's wife, Emma Lou Goodman, was originally a named party in this case but is now deceased.

terclaims against Goodman. The parties were ordered into mediation, but Hess, who was recovering from a recent surgery, was unable to attend. Lothrop, however, did attend and was accompanied by counsel who represented both Appellants. At the meeting the mediator asked the Appellants' counsel if Lothrop had the authority to bind Hess to a settlement. Appellants' counsel assured the mediator, Goodman and Goodman's counsel that Hess had deeded her interest in the property to Lothrop. Although Lothrop was aware of Hess's life estate, she said nothing. Lothrop and Goodman agreed to a settlement: the first 100 feet of the border between the adjoining properties would be at the fence line claimed by the Appellants, and the remaining seventy-five feet of the property boundary would be along a line thirty feet further north and thereby more advantageous to Goodman.

Following the mediation, the Appellants repudiated the agreement. Represented by new counsel,[2] the Appellants asserted that the mediation agreement was unenforceable because although Lothrop has record title to the Appellants' property, Hess retains an unrecorded life estate and she did not consent to the mediation agreement. Goodman filed a motion to enforce the mediation agreement, which the district court initially denied before reversing itself and granting the motion to enforce the mediation agreement on reconsideration. The Appellants then filed their own motion for reconsideration, which was denied. This appeal followed.

## II. ANALYSIS

As a preliminary matter, it should be observed that the Appellants argue strenuously the underlying strength of their claim regarding the disputed property boundary. In particular, the Appellants express displeasure that their previous counsel did not alert them to the issues of adverse possession or boundary by agreement prior to mediation. In this instance, however, the Appellants' claim in the underlying boundary dispute is not the issue before this Court. "The existence of a valid agreement of compromise

and settlement is a complete defense to an action based upon the original claim." *Wilson v. Bogert,* 81 Idaho 535, 542, 347 P.2d 341, 345 (1959). The agreement supersedes and extinguishes all pre-existing claims the parties intended to settle. *Id.* "In an action brought to enforce an agreement of compromise and settlement, made in good faith, the court will not inquire into the merits or validity of the original claim." *Id.* All that remains before this Court is the question of the validity and enforceability of the mediation agreement at issue.

### A. The Standard of Review

The parties disagree as to what standard of review is appropriate. The Appellants argue that because there were no evidentiary hearings there could be no findings of fact. They urge this Court to review their appeal as if it were taken from a ruling on summary judgment. In response, Goodman asserts that the correct standard of review for the enforcement of a mediation agreement allows free review of questions of law but requires this Court to uphold the district court's findings of fact unless those findings are clearly erroneous.

For his position Goodman relies on the recent case of *Caballero v. Wikse,* 140 Idaho 329, 332, 92 P.3d 1076, 1079 (2004). There, this Court deferred to a trial court's findings of fact regarding the enforcement of a mediation agreement because those findings were supported by substantial and competent evidence. *Id.* at 333, 92 P.3d at 1080. The difficulty with Goodman's position, however, is that the appropriate standard of review is not simply a consequence of the substance of the underlying dispute. Instead, this Court must consider the procedural posture in which a case arrives for review to decide the standard of review.

In *Caballero,* the district court ordered the enforcement of a disputed mediation agreement following a bench trial. 140 Idaho at 332, 92 P.3d at 1079. The *Caballero* Court's deference to the lower court's findings of fact stemmed from the procedural posture on review. In that case, because appellate review

**2.** More precisely, Hess is represented by new counsel. Lothrop is now pro se.

followed a bench trial, it was therefore appropriate for this Court to uphold the district court's findings of fact provided they were not clearly erroneous, while at the same time exercising free review over matters of law. *Bolger v. Lance*, 137 Idaho 792, 794, 53 P.3d 1211, 1213 (2002).

Unlike in *Caballero*, here the district court's memorandum decision and order did not follow a trial. Because the standard of review employed in *Caballero* was predicated on the district court having conducted a trial, *Caballero* offers no guidance on what standard of review to apply in the present case.

■ In order to make that determination, it is first necessary to establish what sort of proceeding occurred below. Goodman's "Motion to Enforce [the] Settlement Agreement" functioned as a motion to dismiss the action under I.R.C.P. 12(b)(6) for failure to state a claim upon which relief could be granted.[3] When ruling on such a motion a court looks no further than the pleadings. *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). If a court nevertheless considers material outside the pleadings "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ." I.R.C.P. 12(b). Here, in ruling on the motion the district court went beyond the contents of the pleadings, examining and interpreting the mediation agreement, Hess's deposition testimony, as well as affidavits and exhibits presented by the parties. Having done so, the district court's ruling must be treated as a motion granting summary judgment, even though in this case the district court did not follow the formalities of such a ruling. I.R.C.P. 12(b); *Thomson v. City of Lewiston*, 137 Idaho 473, 476, 50 P.3d 488, 491 (2002).

■ In reviewing a ruling on a summary judgment motion, this Court employs the same standard as that used by the district court. *Sprinkler Irrigation Co. v. John*

*Deere Ins.*, 139 Idaho 691, 695, 85 P.3d 667, 671 (2004). Summary judgment is appropriate "if the pleadings, deposition, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Sprinkler Irrigation Co.*, 139 Idaho at 695–96, 85 P.3d 667. 85 P.3d at 671–72. Summary judgment is inappropriate where "reasonable people could reach different conclusions or draw conflicting inferences from the evidence" regarding a genuine issue of material fact. *Kalange v. Rencher*, 136 Idaho 192, 195, 30 P.3d 970, 973 (2001).

**B. Hess's Life Estate**

■ Hess contends that the real estate contract granted her a life estate in the real property. Although that contract was never recorded, she argues that her possession of the real property gave the Goodmans constructive notice of her life estate, therefore making it valid as to them pursuant to Idaho Code § 55–815.[4] Hess then asserts that Lothrop did not have any authority to bind Hess during the mediation and that the mediating parties were mutually mistaken in reaching an agreement that failed to fully appreciate or respect Hess's life estate in the real property.

Hess did not have a life estate in the real property. Under the doctrine of merger, the real estate contract was merged into the deed, and the deed alone determined Hess's rights. *Estes v. Barry*, 132 Idaho 82, 85, 967 P.2d 284, 287 (1998). Because she did not reserve it in the deed, Hess did not have a life estate in the real property. Since Hess did not have a life estate, whether Goodman had actual or constructive notice is irrele-

---

3. As a settlement agreement is a new contract settling an old dispute, *Wilson*, 81 Idaho at 542, 347 P.2d at 345, it is better practice for litigants to amend their pleadings to add a cause of action for breach of contract rather than, as here, filing a document styled as a "Motion to Enforce Settlement Agreement."

4. Idaho Code § 55–815 provides, "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof."

vant. He could not have had notice of a nonexistent interest in the real property. Whether Lothrop had authority to bind Hess is likewise irrelevant, as is Hess's claim that the mediating parties were mistaken in failing to recognize her life estate. Hess did not have any interest in the real property to recognize and so her consent to any mediated agreement was unnecessary.

Lothrop also argues that the mediation was unfair because her attorney failed to properly advise her regarding the law. She contends that he did not tell her she may have a defense based upon the doctrines of adverse possession and boundary by acquiescence. Lothrop is not entitled to relief from her agreement based upon an alleged mistake by her counsel in failing to advise her of the applicable law prior to or during the mediation proceedings. She voluntarily chose her attorney and cannot avoid the consequences of any failure on his part to advise her of the applicable law. *Henney v. Henney*, 100 Idaho 739, 740, 605 P.2d 503, 504 (1979); *Donovan v. Miller*, 12 Idaho 600, 605–06, 88 P. 82, 88 (1906).

## C. Duress

■ The Appellants argue the mediation agreement should not be enforced because Lothrop entered into the agreement under duress. The Appellants contend that the mediator was intimidating and exerted "undue influence" on Lothrop. Duress "includes that condition of mind produced by the wrongful conduct of another, rendering a person incompetent to contract with the exercise of his free will power." *Inland Empire Refineries v. Jones*, 69 Idaho 335, 339, 206 P.2d 519, 522 (1949). However, conclusory assertions unsupported by specific facts are insufficient to raise a genuine issue of material fact precluding summary judgment. *See State v. Shama Res. Ltd. P'ship*, 127 Idaho 267, 271, 899 P.2d 977, 981 (1995); *Nanney v. Linella, Inc.*, 130 Idaho 477, 480, 943 P.2d 67, 70 (Ct.App.1997).

■ In this instance, the Appellants' claim of duress fails because it lacks specific factual allegations from which a court could infer that the mediator engaged in wrongful conduct that overcame Lothrop's ability to

exercise her free will. Absent the assertion of such specific supporting facts, the allegation of duress in this case does not bar the district court's grant of summary judgment. Additionally, the Court has reviewed the record provided by Appellant and can find no evidence of coercion.

## D. Unfulfilled Conditions

■ As part of the mediated settlement, Lothrop and Goodman agreed it was conditioned on consent from the City of Malad and the ability to obtain title insurance for the newly settled boundaries. The Appellants argue that because those conditions have not been met the agreement cannot be enforced against them. The district court, however, noted that although the conditions have not been met there is no evidence they cannot be met in the future. Additionally, the district court pointed out that it is the continuation of the present litigation that has made those conditions difficult to complete. We agree. Although the Appellants were entitled to perpetuate this lawsuit, they cannot justifiably use the resulting delay in fulfilling the conditions as a reason to prevail in the very lawsuit giving rise to that delay.

## E. The Statute of Frauds

■ The Appellants argue the mediation agreement is void because it violates the statute of frauds. An agreement to convey real estate is generally invalid under the statute of frauds unless it is committed to writing. *See* I.C. §§ 9–505(4), 55–601; *Norwood v. Stevens*, 104 Idaho 44, 45, 655 P.2d 938, 939 (Ct.App.1982). Settlement agreements are contracts that must comply with the statute of frauds in order to be enforceable. *McColm–Traska v. Baker*, 139 Idaho 948, 951, 88 P.3d 767, 770 (2004). There is, however, an exception to the general rule if the agreement in question satisfies the elements of a boundary by agreement. *Reid v. Duzet*, 140 Idaho 389, 392, 94 P.3d 694, 697 (2004). This is because such an agreement does not constitute an oral conveyance of land. *Norwood*, 104 Idaho at 45, 655 P.2d at 939.

There are two elements of a boundary by agreement: "(1) an uncertain or disputed boundary and (2) an express or implied agreement subsequently fixing that boundary." *Johnson v. Newport,* 131 Idaho 521, 523, 960 P.2d 742, 744 (1998). As correctly noted by the district court, the mediation agreement in question meets both elements; the Appellants and Goodman were in a dispute over the boundary between the properties, and the mediation agreement fixed the boundary's location.

The Appellants contend that the mediation agreement does not qualify as a boundary by agreement because it fails two elements of such an agreement described in *Johnson v. Newport,* 131 Idaho at 523, 960 P.2d at 744. The language the Appellants take from *Johnson,* however, was not a listing of the elements of boundary by agreement as the Appellants suggest, but instead was a summary of the factual findings reached in that case by the trial court below. *Id.* The actual elements of boundary by agreement, "(1) an uncertain or disputed boundary and (2) an express or implied agreement subsequently fixing that boundary," were recited elsewhere in *Johnson. Id.* Here, we affirm the district court's application of the elements of boundary by agreement and the resulting exception to the statute of frauds under the facts of this case.

## F. Attorney Fees

Goodman requests an award of attorney fees on appeal pursuant to I.A.R. 41 and I.C. § 12–121. Idaho Appellate Rule 41 provides the procedure for requesting attorney fees on appeal, but is not authority alone for awarding fees. *Shawver v. Huckleberry Estates,* 140 Idaho 354, 365, 93 P.3d 685, 696 (2004). Idaho Code § 12–121 permits an award of attorney fees in a civil action to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation. *Mutual of Enumclaw Ins. Co. v. Pedersen,* 133 Idaho 135, 139, 983 P.2d 208, 212 (1999). The Appellants' arguments, although unconvincing, are not frivolous. Accordingly, we decline to award attorney fees to Goodman.

## III. CONCLUSION

We affirm the district court's order enforcing the mediated settlement agreement. Costs, but not attorney fees, are awarded to the Respondent.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.

